In the Matter of **MARTIN EDSEL, INC.,**
Formerly d/b/a Martin Buick, Inc.
Bankruptcy No. 6019.

United States District Court
D. New Hampshire.
Dec. 5, 1963.

Robert Shaw, Exeter, N. H., for Russell H. McGuirk, trustee.

Francis J. Riordan, Portsmouth, N. H., for Charles A. Mowry and Lillian M. Mowry, creditors.

Frederick W. Murdock, Jr., Lawrence, Mass., for John G. Oddy, creditor.

CONNOR, District Judge.

This is a petition for review of an order of the referee in bankruptcy directing the allowance of a belatedly filed claim on the grounds that a failure to grant said allowance would "constitute a manifest injustice." From the findings of the referee, the following facts appear:

Martin Edsel, Inc., operated an automobile dealership in Dover, New Hampshire, from September, 1955, until May 15, 1958, when a voluntary petition in bankruptcy was filed by said corporation. At all times during this period the entire common stock of the corporation was owned individually or jointly by Norman E. Martin and by his father-in-law, Dr. John G. Oddy. On August 27, 1957, Charles A. Mowry and Lillian M. Mowry, respondent creditors herein, turned over to Norman E. Martin the sum of $25,000, on the alleged understanding that Martin would match this sum and form a new corporation to sell Edsel automobiles at

Portsmouth, New Hampshire. Martin never formed the new corporation, but deposited the Mowrys' money in the general checking account of the now bankrupt Martin Edsel, Inc. The money thus deposited was not segregated, but was allegedly used by Martin Edsel, Inc., to pay its bills, leaving only $109.68 in bank deposits at the time the corporation filed its voluntary petition in bankruptcy.

Norman E. Martin also filed a voluntary petition in bankruptcy on April 17, 1958, and listed Charles and Lillian Mowry as creditors in the amount of $29,000. The Mowrys filed no proof of claim in his estate and the estate was closed as a "no asset" estate on December 30, 1959.

In March of 1958, approximately two months before Martin Edsel, Inc., filed its voluntary petition in bankruptcy, the Mowrys brought an equity petition in the Strafford County Superior Court to impress a trust upon the $25,000 which allegedly came into the hands of the corporation through Norman E. Martin. The trustee in bankruptcy and his attorney contested this petition, and the litigation continued until December of 1961. Meanwhile, the Mowrys did not file a proof of claim in the estate of the corporation within the six months' period specified by 11 U.S.C.A. § 93, sub. n, although Charles Mowry was listed as a creditor of the corporation in an amount unknown and his wife, Lillian Mowry, presumably had actual knowledge of the bankruptcy proceedings.

In the proceedings in the Strafford County Superior Court, the Mowrys failed in their effort to have a trust imposed on the assets of the bankrupt corporation. On December 21, 1961, the court did, however, award the Mowrys a verdict of $25,000 against the corporation on grounds of unjust enrichment. Shortly thereafter, on February 13, 1962, the attorney for the Mowrys filed the general proof of claim which was allowed by the referee's order here under review.

On the state of the record and on the authorities which have been examined, I am of the opinion that, despite the grave wrong that has been inflicted on the Mowrys by the fraudulent conduct of Norman E. Martin, evoking, as it must, a certain measure of sympathy, the order of the referee must be vacated. In directing the allowance of the Mowrys' claim, the referee has apparently relied upon the general equitable powers of the bankruptcy court and upon the dictum of the Supreme Court in Pepper v. Litton, 308 U.S. 295, 305 n. 11, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939), to the effect that this equitable jurisdiction may be exercised by the bankruptcy court to permit claims to be filed and proved late "in order to prevent a fraud or an injustice." This reliance by the referee upon the equitable powers of the bankruptcy court provokes a threefold inquiry as to whether equity may ever provide any relief from the six months' limitation for filing a proof of claim under 11 U.S.C.A. § 93, sub. n, whether any proper equitable grounds have been alleged in the present case, and whether such grounds are sufficient to justify equitable relief.

■ With respect to the first inquiry, it would appear that the equity jurisdiction of a bankrupcty court is not plenary, but must be exercised within the limitations of the Bankruptcy Act. S. E. C. v. United States Realty & Improvement Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940); In re Columbia Ribbon Co., 117 F.2d 999 (3rd Cir. 1941); Burton Coal Co. v. Franklin Coal Co., et al., 67 F.2d 796 (8th Cir. 1933); 1 Collier on Bankruptcy, par. 2.09 (14th ed. 1962). One of the key provisions of the Bankruptcy Act directs that "[c]laims which are not filed within six months after the first date set for the first meeting of creditors shall not be allowed." 11 U.S.C.A. § 93, sub. n. This provision applies to both liquidated and unliquidated claims. 3 Collier on Bankruptcy, par. 57.26 (14th ed. 1962). After full payment of all timely claims which have been duly proved and allowed, late claims may be filed within such time as the court may fix, and such claims, if duly proved, may be allowed against any surplus remain-

ing in the estate. 11 U.S.C.A. § 93, sub. n. This is not the type of late filing for which the Mowrys seek permission, however, as there will be no surplus remaining in the estate of Martin Edsel, Inc., after pro-rata satisfaction of the timely claims. Rather, the Mowrys seek equitable relief from the operation of the six months' period of limitation in order that they might share on an equal footing with those claimants who filed on time.

■ The provisions of § 93, sub. n are not to be disregarded lightly. See In re Paragon Novelty Bag Co., 135 F.2d 210 (2nd Cir. 1943); Hi-Flier Mfg. Co. v. Haberman, 115 F.2d 918 (2nd Cir. 1940); In re Kentucky Mfg. Co., 36 F. Supp. 641 (W.D.Ky.1941). The six months' period of limitation is not the product of Congressional whimsy, but reflects careful consideration of the economic and financial realities of bankruptcy. 3 Collier on Bankruptcy, par. 57.27 at 373–74 (14th ed. 1962). Apart from the specific exceptions enumerated in § 93, sub. n, the six months' bar is mandatory and can be lifted neither in the discretion of the court nor upon the general consideration that some inequitable result would follow. Burton Coal Co. v. Franklin Coal Co., et al., supra; In re Stylerite, Inc., 120 F.Supp. 485 (D.C. N.H.1954); In re Harmack Produce Co., 44 F.Supp. 1 (S.D.N.Y.1942); 1 Collier on Bankruptcy, par. 2.09 at 172 (14th ed. 1962); 3 id., par. 57.27 at 374–84. See In re Paragon Novelty Bag Co., supra; Hi-Flier Mfg. Co. v. Haberman, supra; In re Kentucky Mfg. Co., supra.

Too strict a construction of § 93, sub. n, would, of course, render nugatory the important equity powers of the bankruptcy court. Indeed, some courts have recognized that equity may intervene in the exceptional case in order, in the words of Pepper v. Litton, supra, to "prevent a fraud or an injustice." Williams v. Rice, 30 F.2d 814 (5th Cir. 1929); In re Pierson, 174 F. 160 (S.D.N.Y.1909). Both the Pierson and the Williams cases involved "no asset" estates which were later reopened upon the subsequent discovery of assets. Non-negligent credi-

tors were allowed to file late claims and share pro-rata in the reopened estates both because they had been deceived, however unwittingly, by the circumstance that the estates originally appeared without assets, and because to rule otherwise would defeat the purpose of reopening the estates. Apparently, relying heavily upon the findings in these two cases, the Supreme Court commented in a footnote in Pepper v. Litton, supra, that

"* * * even though the act provides that claims shall not be proved against a bankrupt estate subsequent to six months after the adjudication, the bankruptcy court in the exercise of its equitable jurisdiction has power to permit claims to be proved thereafter in order to prevent a fraud or an injustice." 308 U.S. 305 n. 11, 60 S.Ct. 244, 84 L.Ed 281.

The substantially differing factual situations presented in Pierson and Williams, supra, render these cases inapposite to the case at bar, and it is not altogether clear that the result in these cases would be the same were they to be reconsidered today. See Burton Coal Co. v. Franklin Coal Co., et al., supra.

The footnote in Pepper v. Litton has, in turn, been subjected to criticism, 1 Collier on Bankruptcy, par. 2.09 n. 9, and has been variously characterized as dictum, Arnold v. Phillips, 117 F.2d 497, 502 (5th Cir. 1941), as applying to the Bankruptcy Act prior to the 1938 amendments, In re Paragon Novelty Bag Co., supra; as misleading 3 Collier on Bankruptcy, par. 57.27 n. 14; and as unnecessary and dubious commentary on the state of the law, Milando v. Perrone, 157 F.2d 1002, 1004 (2nd Cir. 1946).

■ Bearing in mind, then, the slender precedent in support of the referee's position and the distinguishing and narrowing considerations which pertain thereto, it would appear to be the better part of both reason and authority that the equity powers of the bankruptcy court are not altogether shackled by the

six months' statute of limitations in 11 U.S.C.A. § 93, sub. n, but that, nevertheless, such powers may be exercised to lift the statutory bar only in the extraordinary case where some element of fraud or injustice has prevented a creditor from filing his claim in timely fashion. Burton Coal Co. v. Franklin Coal Co., et al., supra; In re Harmack Produce Co., supra. See Milando v. Perrone, supra; In re Lewis J. Glazer, Inc., 95 F. Supp. 472 (D.C.Mass.1951).

Turning to the second phase of the inquiry, it appears that no grounds have been either alleged or proved which would justify the exercise of equitable powers within the scope just described. There has been no showing by the respondent creditors herein that any element of fraud or injustice prevented the filing of their $25,000 claim between June 18 and December 18, 1958. As of May 14, 1958, the date of the adjudication of bankruptcy of Martin Edsel, Inc., the Mowrys and the other creditors of the corporation all stood on equal footing with respect to opportunity to file claims against the estate as general creditors. Not only did the Mowrys have actual knowledge of the bankruptcy proceedings, but they also instituted a suit against the corporation in the state court prior to bankruptcy in an effort to secure satisfaction of their claim in full as beneficiaries of an impressed trust, rather than have to accept a partial satisfaction along with the other unsecured creditors. The fact that the state court litigation dragged on three years after the expiration of the six months' period did not prevent the Mowrys from filing their claim in timely fashion. They could have either filed their claim in this court and requested extension of the time to prove their claim, pending the result of the state proceedings, or they could have sought adjudication of their claim here *ab initio*. See 3 Collier on Bankruptcy, par. 57.34 (14th ed. 1962).

Since there has been no allegation or proof of grounds for invoking the equitable powers of this court, it is unnecessary to proceed to the third inquiry as to the sufficiency of such grounds.

It is, therefore, ordered that the petition for review be, and the same is hereby allowed, and the referee's order allowing the late filing of the Mowry claim be and is hereby reversed and vacated.