**FORTNER AND PERRIN, INC.,** a California corporation, as assignee of Carmen E. Fortner and Stan Ruzicka, Appellant,

v.

**James A. A. SMITH,** Trustee in Bankruptcy, Appellee.

No. 18497.

United States Court of Appeals
Ninth Circuit.

Feb. 12, 1964.

802

C. Douglas Wikle, Los Angeles, Cal., for appellant.

Quittner, Stutman, Treister & Glatt, and George M. Treister, Los Angeles, Cal., for appellee.

Before BARNES and DUNIWAY, Circuit Judges, and PENCE, District Judge.

PENCE, District Judge.

In May of 1960, Mrs. Carmen E. Fortner and Stan Ruzicka (sometimes referred to hereinafter as the claimants) owned the stock of two corporations doing engineering and machine shop business. On May 3, 1960, they entered into an agreement with Robert F. Feland, Jr., whereby they sold their stock to him—part payment in cash, and the balance of $152,000 for Mrs. Fortner and $20,000 for Mr. Ruzicka to be paid over a period of years. After the sale, Feland transferred the assets so acquired to Conair, Inc.

On November 1, 1960, Feland had Conair, Inc., file a petition for arrangement under Chapter XI of the Bankruptcy Act. The appellee here was appointed receiver on the same date (and thereafter operated the business until bankruptcy ensued and the corporation's assets were liquidated).

On December 1, 1960, a first meeting of the creditors under Chapter XI was held pursuant to Section 334 of the Bankruptcy Act, 11 U.S.C. § 734, for the purpose of electing a trustee. There was also calendared for the same time a hearing on an order to show cause which raised the issue of whether the claimants or Feland had the right to speak for the debtor corporation, Conair, Inc., in the arrangement.

At that meeting, attorney Charles R. Anderson appeared on behalf of the claimants and the following appears, chronologically, in the record.

"MR. ANDERSON: Your Honor, I have some 38 claims here, totalling $34,000.00, and an additional claim, which is in the amount of $152,000.-00, for Carmen E. Fortner, and an additional claim, in the amount of $20,000.00, for Stanley Ruzicka, and I would like to vote these claims for * * *. (R. 72) * * * Mr. Russ of the firm of Russ, York & Galloway, in Glendale, who is the C.P.A. and whom we would nominate as trustee." (R. 75)

\* \* \* \* \* \*

"THE REFEREE: * * * Also there was a $20,000.00 claim that you say will be filed for Ruzicka?

"MR. ANDERSON: Yes, sir.

"THE REFEREE: Who is the one who had the $152,000.00 claim?

"MR. ANDERSON: Carmen E. Fortner.

"THE REFEREE: Both officers of the corporation?

"Mr. ANDERSON: Yes, sir.

"THE REFEREE: I am going to disqualify their claims for voting purposes. I don't think they are proper persons to vote claims, because of a possible conflict of interest, particularly in view of the battle that apparently is going on as to who are the officers there." (R. 75–76)

\* \* \* \* \* \*

"MR. ANDERSON: Your Honor, we anticipated that the question as to Carmen E. Fortner's claim and Stanley Ruzicka's claim would be determined on the hearing on the petition on the order to show cause which is scheduled for this morning, and until that petition is heard and their case is heard we don't believe it can be determined or should be determined that either Carmen E. Fortner's or Stanley Ruzicka's claim should not be allowed. There is a question of ownership involved. We take the position they are the owners, but until there is a determination by the Court to that effect we have to defer the hearing on the petition." (R. 80)

\* \* \* \* \* \*

"* * * [O]ur position in this matter this morning is not a rescission position. Our position is that the transfer of the title to the assets of the bankrupt [corporation] never passed, that because of the fraud of Mr. Feland, the petitioner for the arrangement herein, a sale never took place and title never passed. * * * A sale never took place." (R. 86–87)

\* \* \* \* \* \*

"[A] Chapter XI proceeding * * * is a voluntary debtor proceeding on the debtor's behalf as well as for the protection of the creditors. * * *

"The evidence will show * * * as a matter of fact, they [Mrs. Fortner and Mr. Ruzicka] are still the owners under California law of this [corporate] entity and these assets * * *." (R. 88–89)

\* \* \* \* \* \*

"[W]e take the position * * * that * * * a sale was never consummated between Mrs. Fortner and Mr. Ruzicka and Mr. Feland, and the sale having not taken place, the title to the property remains in Mrs. Fortner and Mr. Ruzicka. This is incidental to the main problem, which is: Who will speak for the debtor in these arrangement proceedings?

"I understand that the Court can designate through whom the receiver will work in the arrangement proceedings * * * but we are standing on two claims here. Number 1, we are the owner. We are willing and able and anxious to submit a plan of arrangement under this Chapter XI proceeding which was brought about by Mr. Feland in his management [of the corporation] since July 22. We can't do this until a determination of who speaks for the debtor [corporation] is made * * * . We do know, however,

that this Court is vitally interested in saving our business, as vitally as we are, and we want to cooperate, but in order to cooperate we must be recognized, and in order to recognize us [as] the person in possession of the debtor corporation, actual possession, Mr. Feland, must be vacated. That is our position, your Honor." (R. 90–91)

* * * * * *

"The question is, through whom must the receiver act in order to perfect an arrangement proceeding under Chapter XI? Ordinarily in a Chapter XI proceeding it is a debtor proceeding, and the debtor in this case happens to be Carmen E. Fortner and Stanley Ruzicka, as the sole stockholders of this corporation, Conair, Inc." (R. 92)

* * * * * *

"We offered * * * to return to Mr. Feland whatever he had invested in this company * * *. We know * * * that he hasn't one dime of equity in this company * *. We don't feel that a man who has nothing invested can operate for the best interests of the company. * *

"We are not asking you to tell the receiver [Appellee Smith here] what to do * * * but * * * in order for an arrangement proceeding to be effective, there must be someone speaking for the debtor who has something to lose if the arrangement proceeding fails * * *. As to who is hired * * * to press the buttons over at the company, we realize this is the function of the receiver and we concur in this function." (R. 95–96–97)

* * * * * *

"THE REFEREE: Mr. Anderson, let's get one point straight now. Are Fortner and Ruzicka shareholders or creditors?

"MR. ANDERSON: Shareholders.

"THE REFEREE: Very well. They are disqualified from voting for

a trustee, which is what is before the Court at this time. You stated you had 38 claims to file. Do you have them? (Mr. Anderson handing claims to the Referee). We will take a recess at this time so that I can check over these claims, the amount and number." (R. 100–101)

* * * * * *

"THE REFEREE: [T]his is the tme for the election of a trustee, and it is the claims on file at this time that are going to count.

"MR. SULMEYER: [Attorney for debtor corporation and Feland] * * * I just want to point out to the Court you will see the powers of attorney on Mr. Anderson's claims are given to Mr. Anderson and/or Carmen Fortner. Mrs. Fortner he says is a stockholder and I think signed the petition as president.

"THE REFEREE: I have already disqualified them.

"MR. SULMEYER: But I think they are disqualified under the powers of attorney to vote the claims. Both Mr. Anderson and Mrs. Fortner, as shareholders, claim to be the debtor and claim to represent the debtor, so they cannot vote claims for a trustee.

"MR. ANDERSON: Your Honor, may I comment on this? There is nothing in a Chapter XI proceeding to disqualify or make it improper for a debtor to approach creditors either to represent them or in an arrangement proceeding.

"MR. SULMEYER: Mr. Anderson, I think you are confusing consents to a plan and proofs of claim. A debtor under Chapter XI certainly, under express statutory provision, may solicit consents, but here you are talking about claims, and you are purporting to vote your claims. Basically there is a division of interest between the receiver or trustee and the debtor. Just as Mr. Feland or I may not vote any claims, may not solicit powers of attorney for any

claims, may not even vote our own claims, similarly Mr. Anderson and Mrs. Fortner may not vote claims or solicit powers of attorneys for claims." (R. 103–104)

\* \* \* \* \* \*

"THE REFEREE: Before we recess, are there any other creditors in court that have any claims to file or nominations to make for a trustee to be appointed in this matter in the event of an adjudication? Any other creditors?" (R. 104–105)

\* \* \* \* \* \*

"MR. ANDERSON: Your Honor, I told you I have 38 claims. The latest count on the claims I gave you is 64, I believe." (R. 106)

As indicated above, the claimants had secured powers of attorney to vote other claims, and attorney Kemby was assisting attorney Anderson at the time. While the arguments (supra) had been going on, Kemby had been reviewing the claims as to amount and number, and apparently made up a pile of claims separately from the 38 claims originally referred to by Anderson. When it was time to vote the claims, Anderson picked up both piles of claims before him and placed them on the referee's desk, with the statement that he had 38 claims. Shortly after that, Kemby, as he later testified, told Anderson that the correct number was 64, hence Anderson's statement: "The latest count on the claims I gave you is 64, I believe."

The referee took all claims filed by all creditors into chambers and immediately started making a tabulation to determine which group had the majority in number and amount of claims, since two different persons had been nominated as trustee. The referee's tabulation had just gotten under way when Anderson and attorney Treister, who represented other claimants, announced that they had agreed upon appellee here being nominated as trustee. The referee then turned over all of the claims to his docket clerk. The docket did not list the Fortner or Ruzicka claims above referred to.

The Chapter XI proceeding failed several weeks later and an order of adjudication in bankruptcy was entered on January 4, 1961. On January 25, 1961, the bankruptcy first meeting of creditors was held under Section 55 of the Act, 11 U.S. C. § 91. Thus, the six months period for filing claims pursuant to Section 57, sub. n, 11 U.S.C. § 93, sub. n, expired on July 25, 1961.

Around February 1, 1961, at the time of the sale of the assets of the bankrupt, Anderson ceased to represent the claimants in this proceeding, but sometime in July his firm made a transcript of the docket for the purpose of reviewing the claims. Anderson looked it over, didn't see the Fortner or Ruzicka claims listed, then examined the docket himself, and noted that but 62 of his clients' claims were listed as filed on December 1, 1960. Being aware that the six months filing period was to end about that time, he checked and found that July 25th was the cutoff date. Therefore, on the same day, July 27, 1961, Anderson filed five claims, viz., 274, 275, 276, 277 and 278, on behalf of the claimants. None of the five claims were filed as amended claims. Claims 277 and 278 were the $152,000 and the $20,-000 claims referred to by Anderson at the hearing of December 1, 1960. Claim 276 was a $90,200 rental lease claim that was computed after the December 1, 1960 hearing. The other two claims were relatively inconsequential. A short time after he had filed the five claims, Anderson notified claimants' new counsel of that fact.

When the trustee (appellee herein) indicated his belief that these claims were pressed too late, appellants filed their application to have the question of timeliness determined by the referee. The hearing on the question of timeliness was held by the referee on August 23, 1962. Appellants then took the position that claims 277 and 278 had been manually handed to the referee as part of the "64 claims" which Anderson believed he was handing up to the referee on December 1, 1960. While appellants had urged, initially, that claim 276 was among

those filed on December 1, 1960, then later urged that it be considered as an amended claim, at the hearing of August 23, 1962, attorney Wikle, then representing the claimants stated that claim 276 "is not one of the claims we are attempting to establish today * * * we don't intend to prove that the ninety thousand dollar claim was filed [on December 1, 1960]."

At the hearing, it was stipulated that counsel for the claimants searched the files and dockets maintained by the referee's office for the bankrupt's proceedings as well as the other cases heard by the referee on December 1, 1960, without finding any sign of the two claims in question, and that the court's files did not reflect any of these claims as having been filed prior to July 27, 1961. It was also stipulated that the trustee and his attorneys would testify that they searched their own files but could not find "the lost claims" (claims 277 and 278).

Anderson and Kemby both testified for the claimants. Anderson testified that the 38 claims were in a pile at the counsel table and the 2 claims of the claimants were clipped together separately (from the 38 claims). The conflicting testimony of both Anderson and Kemby indicated confusion as to just what happened to the Fortner and Ruzicka claims, Anderson recalling that the "Fortner and Ruzicka claims were in my hand. The other pile was on the Bench, and * * * Mr. Kemby handed me the second pile * * * and placed the Ruzicka and Fortner claims on top of the pile, and I had two stacks in two hands and brought them up and laid them on the Bench."

Anderson admitted he didn't have a recollection of standing up at the referee's bench and looking down and seeing the Fortner and Ruzicka claims there. His only recollection was of placing them there "because we had been discussing them." And conflicting with his first recollection, indicated just above, said: "I do recall placing them on top of one stack."

Kemby testified that Anderson had one group of claims (the 38, plus the Fortner and Ruzicka claims), and Kemby had another group "in a separate pile, a separate package, and * * * when it was time to vote the claims I brought these to [Anderson] and he took them up to the desk and placed them on the desk." Kemby said he never "watch-dogged" the claims which Anderson placed on the bench.

The referee stated that he had not seen the Fortner or Ruzicka claims in the few that he had reviewed before Smith was agreed upon as trustee.

After the hearing, the referee found that the two claims had not been actually and manually placed, i. e., filed, upon his desk on December 1, 1960, rejected the two claims, and an order ruling that the filing of claims 276, 277, and 278 on July 27, 1961 was out of time was entered on September 5, 1962. Appellants petitioned for review, and a hearing before the district judge was held November 5, 1962, at which time no witnesses were examined, resulting in an order of affirmance of the referee's conclusion entered November 15, 1962. Appeal to this court followed.

 The basic question before this court is whether the referee as well as the district court clearly erred in rejecting claims 276, 277 and 278 as having been filed out of time. Three corollary questions were presented thereunder, viz.:

1. Are the referee's and district court's findings that the allegedly lost two claims were not physically presented to the court on December 1, 1960, sustained by the facts?

2. Does the oral presentation of those two claims in open court, upon the facts here, constitute sufficient compliance with filing requirements, even in the absence of physical delivery to the court, so as to permit the filing out of time of the same claims, as proper substituted or amended claims?

3. Does the referee's action at the hearing of August 23, 1962 in making a

statement of fact concerning matters not reflected in the record before him, here constitute reversible error?

Because this case turns upon a narrow factual basis, we have set forth the facts in considerable detail to provide for a full evaluation of our opinion, hereafter. As the record clearly manifests, on December 1, 1960 the claimants were faced with a dilemma: if they declared themselves to be creditors for the balance of the purchase price owing to them on the sale of their stock, this act could be construed to be ratification of the sale contract. Thus they would prejudice their position that no sale of the stock had legally taken place, that title had never passed to Feland, and that they were the lawful shareholders and owners of the debtor corporation.

Therefore, before ever any claims were filed, when faced with the issue: are Fortner and Ruzicka "shareholders or creditors?", and Anderson replied, "Shareholders", a most reasonable inference then follows that Anderson never intended to file the Fortner and Ruzicka claims at that time. This inference is bolstered by Anderson stating, a few moments later, that he was filing 38 claims—not 40, as would logically have been his reply if he had intended then to file the Fortner and Ruzicka claims.

Although the appellants strongly maintain that the record conclusively affirms their position that they filed 64 claims, as may be seen, supra, the record does not require that that conclusion be drawn. It appears from Anderson's and Kemby's testimony at the hearing of August 23, 1962, that neither could say with absolute certainty that either had actually seen the two claims going up to and landing on the referee's desk. It is manifest from the record, however, that Anderson did not know how many claims he was filing when he handed up what he said were "38 claims." The record also shows that Kemby, likewise, did not know exactly how many claims were transported to the referee's desk. The record is inconclusive as to whether the figure "64"

which Kemby supplied to Anderson included the two "lost claims", and does not nullify in the slightest the impact of Anderson first using the figure "38"—a figure that could have been accurate only if the two "lost claims" were not being handed up to the referee for filing.

When a search of the referee's records and docket failed to show any such claims or memorandum of the same, then apart from any recollection of the referee as to what transpired on December 1, 1960, we find that it was not clear error, and in fact not error at all, for both the referee and the reviewing district court to find and conclude that there had been no manual filing of the Fortner and Ruzicka claims on December 1, 1960. Anderson's act of filing five claims on July 27, 1961, and claimants subsequently urging that claim 276 had been filed on December 1, 1960 along with claims 277 and 278, does but give added weight to our conclusion.

■ Appellants additionally urge, that even in the absence of physical delivery of the claims to the referee, nevertheless since the record of the December 1, 1960 proceedings fully sets forth an oral statement of the nature and amounts of the two "lost claims", such profference as then occurred was sufficient compliance with the Bankruptcy Act, § 57, sub. n, 11 U.S.C. § 93, sub. n, to demand under the broad equitable powers ascribed to a bankruptcy court (cf. Scotsville Nat. Bank v. Gilmer, (C.C.A., 4th Cir.), 37 F.2d 227) that those same claims, when filed on July 27, 1961, be allowed as proper substituted or amended claims. Our answer here is "no"! A similar situation and contention was reviewed and refused in Avidon v. Halpert, (C.A. 2, 1944) 145 F.2d 884. While conceivably there might be a factual situation which would compel us to approve an oral "filing" of a claim without a scrap of paper or a "scratch of the pen" in the court's record to confirm the same and constitute token conformance with the Bankruptcy Act's Section 57, sub. a, 11 U.S.C. § 93, sub. a, this court in Perry v. Certificate Holders of Thrift Savings, (9 Cir. 1963) 320

F.2d 584, 589, has already stated its position:

> It is a "Congressional requirement that a claim must be proved within a fixed time and that if not so proved, it may not be allowed. * * * The statute and General Order 21 (11 U.S.C. § 93, sub. a and G.O. 21, following 11 U.S.C.A. § 53) prescribe the form and content of a proof of claim. There must be at least some attempt to comply. As Judge Parker said in Fyne v. Atlas Supply Co., 4 Cir., 1957, 245 F.2d 107, 108: 'We agree that mere knowledge on the part of the trustee or of the referee in bankruptcy as to the existence of a claim is not sufficient basis for allowing the filing of an amended claim * * *.'"

Also:

> "From our examination of the authorities, we take it that two propositions are firmly established: (1) that the courts will be liberal in permitting amendments to claims where an attempt has been made, within the time limit, to comply with the requirement that a proof of claim be filed; and (2) that the courts, in cases in which no injustice will be done, will be liberal in determining that such an attempt has been made. We can find no case, however, that disagrees with Judge Parker's dictum, quoted above. We think that, to begin with, there must have been presented, within the time limit, by or on behalf of the creditor, some written instrument which brings to the attention of the court the nature and amount of the claim. * * * The Fyne case goes as far as any— and as far as we think is proper."[1]

 Appellants also contend that inasmuch as the referee in the August 23, 1962 hearing made a statement of fact concerning matters occurring on December 1, 1960, not reflected in the record before him, he was therefore acting as both witness and judge in the case he was trying and his failure to disqualify himself, therefore, constitutes reversible error. This is the referee's statement:

> " * * * [T]he Court took the claims into chambers and immediately started making a tabulation for the purpose of determining which group had the majority in number and amount of claims, as there were two different persons nominated as trustee. The Court had finished the tabulation as to some eight or ten or twelve of the claims when Mr. Anderson and Mr. Treister came into chambers and announced that Mr. Anderson in effect had withdrawn his candidate and that he had no opposition to Mr. Smith's being nominated as trustee.

> "A conversation ensued for a short period of time in which, as I recall, there was some discussion as to whether the Court would consider hearing this dispute as to the ownership. Mr. Anderson and Mr. Treister and I believe Mr. Sulmeyer came in also. They then left my chambers, and the Court immediately took the entire stack of claims and handed them to my docket clerk. I hadn't had time to count all the claims. I didn't see the claim of Mrs. Fortner or Mr. Ruzicka. As I say, I hadn't had the opportunity to go through all the claims. I resumed the Bench and proceeded with the matter."

It is not claimed that the referee was biased or prejudiced and in the absence of such an objection or showing, a judge or referee is not automatically deprived of his jurisdiction of a case because he is cognizant of the facts therein from having participated in previous proceed-

---

1. In Fyne v. Atlas Supply Co., supra, there was a letter of counsel for claimant to the counsel for the trustee amounting to an assertion to the rights in a bankrupt's estate, participation of counsel for claim- ants in the first meeting of creditors, and the bankruptcy proceeding showed on its face that it was based upon proceedings taken by the claimant for the collection of the claim in question.

ings in a case in which the same subject matter was involved.

While it is admittedly better practice for a referee or judge to disqualify himself if he is to become a witness in a cause before him, the statement of the referee here shows unequivocally that his ultimate ruling did not turn on his scrutiny of a few of the claims actually filed with him.

Counsel were fully aware that it was the referee's duty to scrutinize, check and tabulate the claims handed up; they were aware, when they entered his chambers to inform him that a trustee had been agreed upon, that he was so acting. At the August 23, 1962 hearing, they had ample opportunity to question him as to what was disclosed in the few claims he had reviewed, as well as to suggest his disqualification if they felt prejudiced by what he then said. They did none of those things. Actually, it was here clearly desirable for the referee to have stated his personal observation as to whether the Fortner and Ruzicka claims were among the few tabulated by him, otherwise the parties and reviewing courts could not know what was disclosed by the claims he examined, or how it affected his disposition of the case, and hence all factors could not properly be weighed by the reviewing courts. Cf. In re Cook's Motors, (D.C.D.Mass.1943) 52 F.Supp. 107, remanded on other grounds (8 Cir. 1944) 142 F.2d 369; 3 Wigmore on Evidence, §§ 24, 1169. If the referee's statement here can conceivably be deemed any error at all, it certainly did not constitute prejudicial error. Cf. Leong Kim Wai v. Burnett, (9 Cir. 1928) 23 F.2d 789.

■ While unnecessary for the disposition of this case, we note that even if Mrs. Fortner's claim 277 had been deemed timely filed, her claim 276 for lease rental computed after December 1, 1960 could not have been properly accepted as an amended claim, inasmuch as it arose out of an entirely new, distinct and different cause of action than claim 277. There is nothing in claim 277 to serve as a legal basis for tacking claim 276 on to it. See In re G. L. Miller & Co., (2 Cir. 1930) 45 F.2d 115.

■ In a bankruptcy case, the scope of this court's review is limited to the record and to that which was presented below. United States v. Goggin, (9 Cir. 1951) 187 F.2d 530. From the record in this case, we certainly cannot say that the findings and conclusions of the referee and the district court were clearly erroneous. Briskin v. White, 296 F.2d 132 (9 Cir. 1961).

Affirmed.