**In re V–M CORPORATION, Bankrupt.**

**Bankruptcy No. NK 77–00934 B 8.**

United States Bankruptcy Court,
W.D. Michigan.

Oct. 5, 1982.

Marc M. Dittenhoefer, New York City, for petitioner.

Hartwig, Crow, Jones & Postelli, J.D. Hartwig, St. Joseph, Mich., for bankrupt.

OPINION

DAVID E. NIMS, Jr., Bankruptcy Judge.

### CLAIMS—FILING PROOFS OF CLAIM—EQUITY

Oxford Hobart, Inc., (Hobart) filed a petition for the reconsideration of the order of this Court entered February 8, 1982, disallowing Hobart's proof of claim filed September 18, 1978.

A voluntary petition for adjudication was filed by V–M Corporation (V–M) July 19, 1977. As this case was filed prior to October 1, 1979, it is governed by the Bankruptcy Act of 1898 as amended. Bankruptcy Reform Act of 1978, Pub.L. 95–598 Sec. 403(a).

The First Meeting of Creditors was set for August 19, 1977. Hobart filed its proof of claim September 18, 1978.

Bankruptcy Rule 302(e) provides that "a claim must be filed within 6 months after the first date set for the first meeting of creditors" with certain exceptions which would not apply in this case. The sole issue is whether under the special facts in this case, the court should allow the claim of Hobart even though it was filed twelve

months and 29 days after the first date set for the first meeting of creditors.

Under local bankruptcy rules adopted by the United States District Court for the Western District of Michigan pursuant to Bankruptcy Rule 927, debtors are required to file with the court a matrix of creditors in alphabetical order. The debtor filed such a matrix with its petition. This was accepted as the list of creditors required by Bankruptcy Rule 108. Hobart was not included on this matrix. An order was entered on the date of filing setting the first meeting of creditors on August 19, 1977. On August 11, 1977, a statement of affairs and schedule of debts and property was filed. The schedule of debts listed under "Royalties and Commissions" "Oxford-Hobart $50,-206.00." On July 26, 1978, an amended schedule added several creditors but omitted Hobart.

V–M is a Michigan Corporation which for many years manufactured quality record players, televisions and radios. It operated out of several buildings in Benton Harbor, Michigan. Hobart is the sales representative for V–M in New York City. The president of Hobart, Harold F. Dittenhoefer (Dittenhoefer) was a friend of Victor Miller (Miller), president of V–M. On July 29, 1977, ten days after the filing, Miller telephoned Dittenhoefer and notified him of the filing of V–M. Dittenhoefer wrote Miller on August 1, 1977, referring to the telephone conference, enclosed a statement of V–M's debt to Hobart, and stated:

> "I would appreciate your advising me of the Federal District Court that will have jurisdiction in the bankruptcy proceedings and the name of the Trustee that is appointed as soon as you know who they are."

Three weeks later Miller met with Dittenhoefer at Hobart's offices in New York where the case was discussed.

3 Collier on Bankruptcy Sec. 52.27 (14th ed. 1977) sets forth the law under the 1898 Act and the Rules:

> "The weight of authority considers the statutory six months' period as mandatory and immutable. 'This is a statute of

limitations. It is even more. It is a prohibition. It is peremptory.' Prior to the 1938 Act, neither lack of notice, an attorney's error, nor a mistaken belief that the claim had been timely filed, were deemed sufficient to override the terms of the Act. But, where circumstances such as misleading statements in the bankrupt's schedules as to the value of the assets, or other fraudulent conduct, prevented filing within time, or where there were sufficient funds available for complete dividend distribution, the courts were divided as to whether an extension of time could be granted through the bankruptcy courts' equitable powers. The same difference of opinion existed where there was a re-opening of the estate for discovery of new assets, and some courts indicated that where the equities of the case required, such as fraud on the part of the bankrupt, or where there had been no assets in the original proceeding and no claims filed, they would extend the time for filing claims. The Act of 1938, however, with its manifold amendments to § 57n, added as they were with full knowledge of the existing divergences of judicial views, constitutes a distinct reinforcement of the reasoning in favor of strict and 'equity-proof' application of the statutory limitation. In allowing for extension of the time to file governmental tax claims, and in allowing the belated filing of proofs in cases where there is a surplus after all the other creditors have been paid in full, the Act unmistakably implies that under no circumstances other than those specifically referred to in the statute may the court admit a claim to untimely proof, but that it is under a duty to disallow it, with no power to substitute equitable considerations for the manifest intent of Congress. And Rule 302(e) has not changed this concept. Its basic language is: 'A claim must be filed within 6 months after the first date set for the first meeting of creditors....' "

Sec. 2a. of the 1878 Act provides that courts of bankruptcy are invested with jur-

isdiction at law and in equity. Hobart relies on this Section and *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). In that case, the dominant and controlling officer of a bankrupt corporation, through Machiavellian manipulations, acquired a large secured claim so as to defeat the rights of a judgment creditor. The Supreme Court reversed the Court of Appeals which had reversed the District Court's order subordinating the stockholder's claim. Referring to Section 2, Justice Douglas stated:

> "The bankruptcy courts have exercised these equitable powers in passing on a wide range of problems arising out of the administration of bankrupt estates. They have been invoked to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done."

In a footnote, Justice Douglas points out:

> "And even though the act provides that claims shall not be proved against a bankrupt estate subsequent to six months after the adjudication, the bankruptcy court in the exercise of its equitable jurisdiction has power to permit claims to be proved thereafter in order to prevent a fraud or an injustice."

I would agree that there will be occasions on which a court should prevent fraud or an injustice by the exercise of its equitable powers. But, the cases cited by Justice Douglas and others which allow filing after the six month period are distinguishable from this case.

In *In re Fagan,* 140 F. 758 (D.S.C.1905) a trustee had successfully sued in a state trial court to recover a preferential transfer which was eventually affirmed by the State Supreme Court. The creditor paid as ordered and then filed its proof of claim. But, by now over a year had lapsed from the date of adjudication (the time allowed for filing claims at that time). The claim was allowed. Because of this obvious injustice, the law was amended to allow a person whose claim arises because of a judgment for recovery of money or property 30 days after such judgment becomes final. To the same effect see *In re Landis,* 156 F. 318 (E.D.Pa.1907).

In a few cases courts have designated a letter or other document filed with the referee or trustee a claim which could be amended by a later filed formal claim. *In re Gibraltor Amusements Ltd.,* 315 F.2d 210 (Cir., 1963), cert. den. 368 U.S. 925, 82 S.Ct. 360, 7 L.Ed.2d 190 (1961) (Letter to receiver who subsequently became the trustee). But, in *Wheeling Valley Coal Corp. v. Mead,* 171 F.2d 916 (4th Cir.1949) the court cautioned that amendments after the termination of the time for filing should be closely scrutinized to assure that the claim filed was not a new claim rather than an amendment. There the amendment was denied. See also *W.F. Sebel Co., Inc. v. Hessee,* 214 F.2d 459 (10th Cir.1954).

The United States District Court for the Western District of Michigan has taken a more conservative view of amendments than some other courts. In *In re Beattie,* 102 F.Supp. 107 (W.D.Mich.1951) the creditor's attorney argued that he had filed a proof of claim. A cover letter was received but not the claim. In correspondence with the trustee the attorney referred to the claim, giving the date of judgment and amount. The claim was finally filed after the six month period. The referee denied the petition to file an amended claim. In affirming the referee, Judge Starr stated:

> "It is doubtful whether, even prior to the 1938 amendment of the Bankruptcy Act, the petitioner's showing in the present case would have been held to be a sufficient basis for an amendment of its claim after the expiration of the statutory period for filing. In any event, the 1938 amendment makes discussion of the point unnecessary, because it is clear that under the present law the petitioner has no basis for an amendment."

Although, the bankruptcy judges are no longer officers of the United States District Courts, the new Bankruptcy Courts are "an adjunct of the district court for such district" and with limited exceptions, in this Circuit, appeals are taken to the

district court. I would therefore feel that I am bound by the decisions of the district court for this judicial district.

In one rather unique decision, *In re Sieban & Byrnes, Inc.,* 291 F.Supp. 315 (S.D.N.Y.1968), a local union filed claims on behalf of 9 former employees of the bankrupt long after the six month period. The employees were not scheduled but the Union Welfare Fund and the pension fund, which both had the same address as the union, were scheduled. The referee denied the Union's application to file the claims *nunc pro tunc.* The district court reversed the referee and remanded the case in order to permit the filing of the claims *nunc pro tunc,* as though filed within the six month period. The court set forth several reasons for its opinion—(1) claimants were entitled to priority, (2) they received no notice of the first meeting, (3) were not expected to know the intricacies of the bankruptcy statutes, (4) should not be faulted for inexcusable delay of union in bringing their claims to the attention of the bankruptcy court, (5) claims are not substantial from viewpoint of the estate but substantial to claimants. This case was followed in *In re Electronic Computer Programming Institute of Fresno, Inc.,* 16 Collier Bankr.Cas. (MB) 236 (Bankr.S.D.N.Y.1978).

The bankruptcy court's equitable powers are not unlimited. "A bankruptcy court is guided by equitable doctrines and principles but only insofar as they are consistent with the Bankruptcy Act." *In re Texas Consumer Finance Corp.,* 480 F.2d 1261 (5th Cir., 1973); *Knox v. Lines,* 463 F.2d 561 (9th Cir., 1972).

The courts have generally disallowed late filed claims. *In re Vandergrift,* 232 F.Supp. 857 (W.D.Pa.1964) Affd. on basis of district judges opinion 341 F.2d 921 (3d Cir.1965) (reversal of referee's allowing of late filed claim because it would not delay administration); *Fortner and Perrin, Inc.,* 327 F.2d 801 (9th Cir.1963) (found that two "lost" claims were not filed); *Perry v. Certificate Holders of Thrift Savings,* 320 F.2d 584 (9th Cir.1963) (although court recognized it was a hard case, it refused to affirm what it considered to be bad law); *Milando v. Perrone,* 157 F.2d 1002 (2d Cir., 1946) (held that *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 was dictum "which should not be taken as a final stamp of approval on propositions not necessary to the court's decision."); *In re Paragon Novelty Bag Co.,* 135 F.2d 210 (2d Cir.1943) (a claim filed three days late was disallowed even though creditor, City of New York, claimed matter overlooked because of changes in personnel); *Burton Coal Co. v. Franklin Coal Co.,* 67 F.2d 796 (8th Cir.1933) (disallowed even though under the law of the time surplus would be returned to bankrupt); *In re Imperial Sheet Metal, Inc.,* 352 F.Supp. 1149 (M.D.La.1973) (A rough case—attorney mailed four claims on Thursday, Washington's Birthday. Last day to file would have been Thursday but since it was a legal holiday, claims could have been filed Friday. Claims were not received by the referee until Monday. Both attorney and referee were located in Baton Rouge, La.); *In re Semel & Co.,* 285 F.Supp. 536 (D.N.J. 1968); *In re Vega Baja Lumber Yard, Inc.,* 285 F.Supp. 143 (D.P.R.1968) (disallowed even though creditor had a pending claim in the district court and trustee knew of the claim); *In re Martin Edsel, Inc.,* 228 F.Supp. 538 (D.N.H.1963) (where suit to impose a trust was pending at time of filing and judgment was not entered until after the six month period, referee allowed late filing because not to do so would "constitute a manifest injustice". District court reversed because referee exceeded his jurisdiction." The six months' period of limitation is not a product of Congressional whimsy, but reflects careful consideration of the economic and financial realities of bankruptcy.") *In re 74 Knowles Street Corp.,* 52 F.Supp. 715 (E.D.N.Y.1943) (In reversing referee's allowance of late filing, quotes from Senate Report No. 1916 on H.R. 8046, 75th Congress, 3d Sess. (1938): "The committee has both strengthened and extended this proposed amendment by providing, first, that such claims must actually be filed within the bar time, and, second, by permitting additional time for the filing of such claims (government claims) upon application for cause shown.")

Hobart claims that it is excused from the six month period because it received no notice. Bankr.Rule 203 provides that "the court shall give all creditors at least 10 days' notice by mail of (1) a meeting of creditors * *." Hobart received no notice of the first meeting of creditors because it was not included on the matrix filed with the voluntary petition. It is to be noted that Bankruptcy Official Form No. 12, "Order for First Meeting of Creditors and Fixing Times for Filing Objections to Discharge and for Filing Complaints to Determine Dischargeability of Certain Debts, Combined With Notice Thereof and of Automatic Stay", a rather lengthy form, does include *inter alia* the following paragraph:

"In order to have his claim allowed so that he may share in any distribution from the estate, a creditor must file a claim, whether or not he is included in the list of creditors filed by the bankrupt. Claims which are not filed within 6 months after the above date set for the first meeting of creditors will not be allowed, except as otherwise provided by law. A claim may be filed in the office of the undersigned bankruptcy judge on an official form prescribed for a proof of claim."

In *In re Miller,* 485 F.2d 74 (5th Cir.1973) Cert. Den. 415 U.S. 990, 94 S.Ct. 1588, 39 L.Ed.2d 886 (1974) a petition was filed in S.D.Fla. and notice of first meeting was served. The case was then transferred to E.D.La. and the La. referee, in error, gave a new date for filing claims. Believing the court had extended the time to file claims, the Internal Revenue Service filed its claim between the two dates. The referee denied the claim because of the late filing. The district court ordered the referee to allow the claim and this was affirmed by the court of appeals which stated:

"The general equity power existing in the bankruptcy courts is well established and has been traditionally recognized. *Bank of Marin v. England,* 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966). Cautiously, this equity power has been employed to prevent an unfair result occasioned by the six-month period provision

of Section 57n. *In re Miracle Mart, Inc.,* 396 F.2d 62, 64 (2d Cir.1968); *In re Martin Edsel, Inc.,* 228 F.Supp. 538, 540–541 (D.C.N.H.1963). See *Pepper v. Litton,* 308 U.S. 295, 305 n. 11, 60 S.Ct. 238 [244 n. 11], 84 L.Ed. 281 (1939). An unfair result would obtain in the case at bar if the Government were not allowed to file its claim after reliance on the court order apparently extending the filing date. The District Court was correct in allowing the Government to file its claim."

In *In re H & C Table Co.,* 457 F.Supp. 858 (W.D.Tenn.1978) notice of first meeting was sent to the S.B.A. but not the U.S. Attorney as required by Rule 203(g). The U.S. Attorney did receive notice of the final meeting and then filed a proof of claim on behalf of the S.B.A. Referee disallowed the claim as being late but the case was remanded to the referee by the district court for a determination of whether he should exercise his equitable power to allow a late claim under these conditions.

Claims were allowed in two other cases where notices were not mailed or were improper. *In re Comac Co.,* 402 F.Supp. 43 (E.D.Mich.1975). (Bankrupt realized at first meeting that list of creditors was incomplete and bankrupt was ordered to file complete schedules. The calling of a new first meeting and setting of a new time in which to file claims was held not to be improper); *In re Bender Body Co.,* 47 F.Supp. 267 (N.D.Ohio 1942) (Referee's notice gave 6 months to file claims instead of 3 months allowed for Chapter X cases at the time.)

Hobart cites one early case under the Bankruptcy Act of 1867, *Russell v. Phelps,* 42 Mich. 377, 4 N.W. 1 (1880). In a jury trial, the assignee (the title for the referee under the 1867 Act) was found to have failed to perform his duties in failing to give notice to creditors of meetings of creditors.

Where notice was not given, a later claim was disallowed in *In re Weis Securities, Inc.,* 411 F.Supp. 194 (S.D.N.Y.1975) (there was publication) and *In re Muskoka Lum-*

*ber Co.,* 11 Am.Bankr.Rep. 761 (W.D.N.Y. 1904).

Hobart points out the duties of the referee under Sec. 39(a) of the Bankruptcy Act of 1898 which states in part:

"§ 39. Duties of Referees. a. Referees shall (1) give notice to creditors and other parties in interest, as provided in this Act; (2) prepare and file the schedules of property and lists of creditors required to be filed by the bankrupts or cause the same to be done when the bankrupts fail, refuse, or neglect to do so; (3) examine all schedules of property, lists of creditors, and statements of affairs, filed as provided under this Act, and cause such as are incomplete and defective to be amended; * * * "

Subsection (2) was superseded in 1973 by Bankruptcy Rule 108(d), which permits the court to order the trustee, creditor or other party in interest to prepare and file schedules where the bankrupt fails to do so.

Creditors are protected against untimely mailing of notices due to the omission of a creditor or an improper address in the debtor's schedules. Under the 1898 Act this protection was given through Sec. 17(a)(3) which denied a discharge of a debt which was not "duly scheduled in time for proof and allowance, with the name of creditor, if known to the bankrupt * *." But, such relief is of little help to a creditor if a debtor is a corporation in a liquidating proceeding. The uselessness of a discharge to such a corporate debtor was recognized by the drafters of the 1978 Act which eliminated the discharge to the liquidated corporate debtor.

But it seems to me that even in such a case the creditor is not wholly without relief. If the responsible officers of a corporation omit a creditor or improperly schedule him through negligence, the creditor would have a cause of action against the appropriate officers.

Also, if a creditor is without notice in time to file a claim because of the failure of the court to give such notice or if a notice is misleading, a court should as a matter of equity extend the time for filing claims.

But, the failure to schedule a claim is not necessarily grounds for the denial of a discharge of that claim. Sec. 17(a) of the Bankruptcy Act of 1898 provides:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * * (3) have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy; * * * "

Thus, an individual debtor is entitled to a discharge of an omitted claim as long as the creditor had actual knowledge of the proceedings in bankruptcy. There is no requirement that an official notice be given with instructions for filing claims. The law presumes that the prudent creditor will make inquiry as to his duties in order to share in the distribution of a debtors estate. The new Code makes no change in this regard. 11 U.S.C. Sec. 523(a)(3).

I find no reason to give more protection where the debtor is a corporation especially since creditors in a corporate case are likely to be more sophisticated and knowledgeable. Here Hobart's president not only knew of the bankruptcy of V–M, but he had discussed the case with V–M's president. He was closely involved with V–M's operations, had been in business for many years and indicated a general businessman's knowledge of bankruptcy as indicated by his letter.

Although this case is under the 1898 Act, it is interesting to note that 11 U.S.C. Sec. 726 provides:

"Except as provided in section 510 of this title, property of the estate shall be distributed—

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title;

(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—

958

(A) timely filed under section 501(a) of this title;

(B) timely filed under section 501(b) or 501(c) of this title; or

(C) tardily filed under section 501(a) of this title, if—

(i) the creditor that holds such claim did not have notice or <u>actual knowledge</u> of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and

(ii) proof of such claim is filed in time to permit payment of such claim; * * " (underlining provided)

In referring to Sec. 726(a), both H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 383 (1977) and S.Rep. No. 95–989, 95th Cong., 2d Sess. 96–97 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6339, 5883 state:

"The provision is written to permit distribution to creditors that tardily file claims if their tardiness was due to lack of notice or knowledge of the case. Though it is in the interest of the estate to encourage timely filing, when tardy filing is not the result of a failure to act by the creditor, the normal subordination penalty should not apply. * * * "

In the comments to Sec. 726 in the 1981 Collier Pamphlet Ed. Former Bankruptcy Judge Asa S. Herzog and Prof. Lawrence P. King state:

"A tardily filed claim may be allowed where the tardiness was due to lack of notice or knowledge of the case; a departure from prior law under which the six-month filing provision was strictly enforced. A creditor with no knowledge of the bankruptcy had a nondischargeable debt, but lack of knowledge of the pendency of the case was not a ground, under the Act, to permit a late filing."

This is not such a case where a court should or can ignore the clear directions from Congress.

Claim number 651 filed by Hobart is disallowed except as to any surplus that may remain after the payment in full of all timely filed claims.