**In the Matter of E & E L.P. GAS, INC., Debtor.**

**Bankruptcy No. 80–31060.**

United States Bankruptcy Court,
N.D. Indiana,
South Bend Division.

Jan. 31, 1983.

Mark R. Wenzel, South Bend, Ind., for creditor/movant.

William A. Thorne, Elkhart, Ind., for debtor/respondent.

## ORDER

ROBERT K. RODIBAUGH, Bankruptcy Judge.

Debtor herein has undergone a chapter 11 reorganization. Creditor Midstate Power Transmission Company, Inc., filed a late motion for payment of an unsecured claim against debtor. Debtor objected, a hearing was held on June 24, 1982, and on Novem-

ber 30, 1982, the court denied the motion. Midstate then filed a motion to reconsider the denial. A hearing was held on this motion on January 13, 1983. Midstate submitted a memorandum in support of its motion which included an affidavit by the President of Midstate, Robert L. Tiedge, and the motion was taken under advisement.

## FINDINGS OF FACT

Midstate made sales of its products to a company headed by Steve Eaton, called E & E L.P. Gas, Incorporated, between October 1979 and September 1980. By September of 1980, Midstate's Accounts Receivable Ledger showed sales amounting to $1,675.21; payments had reduced the amount owing to $1,320.19, and this is the amount Midstate now claims.

On November 10, 1980, E & E filed a chapter 11 petition in bankruptcy with this court. Midstate was not on its list of creditors. Testimony at the June 24 hearing indicated that E & E considered that the debt due Midstate was owed by Propane Carboration, Inc., a company also owned and managed by Steve Eaton. Midstate says that it first learned of E & E's bankruptcy proceeding in July of 1981. A letter dated July 10, 1981, from the reorganized E & E's attorney William A. Thorne to Mr. Tiedge indicates that Midstate had made an inquiry about its debt on that date. Mr. Thorne refers to the debt as being for purchases made from January through July of 1980, and adds:

> It is my further understanding that during the first several days of June you had numerous conversations with Mr. Eaton who indicated that the money would be paid and that he was only having difficulty collecting his accounts receivable. It is my further understanding that Mr. Eaton failed to advise you that E & E L.P. Gas, Inc., had sought relief under Chapter 11 of the Bankruptcy Code; and you, therefore were unable to file a timely claim in said proceedings.[1]

---

1. Letter of W.A. Thorne, July 10, 1981. It is not clear whether the "June" referred to was 1980 or 1981.

The last date for filing claims in the E & E bankruptcy was May 11, 1981. The plan of reorganization filed by a major creditor, Commonwealth Propane, Inc., was approved on June 5, 1981. Commonwealth then extended credit and money to the new company according to the plan, and payments to creditors were begun.

Propane Carboration, meanwhile, filed a chapter 7 bankruptcy petition on August 4, 1981, under the name of "P-Car," and listed Midstate as a creditor. When Midstate received the notice of this bankruptcy filing, Mr. Tiedge's affidavit states that he believed it to be a mistake, and therefore disregarded it.

Midstate filed its proof of claim in the E & E case on August 6, 1981: three months after the last date for filing claims, two days after P-Car's chapter 7 filing, and almost a year after the last sale of goods had been made. Steve Eaton, president and sole owner of both companies, had given up management of E & E on March 10, 1981, the date that a Trustee was appointed by this court. When the creditors of E & E formed its plan of reorganization, they relied upon the schedules given to them by Mr. Eaton. They had no way of knowing of the existence of Midstate. Apparently Midstate had sent no notice of the overdue bill to E & E from September, 1980, until July, 1981, when they telephoned the new company. Propane Carboration had listed Midstate as a creditor and E & E had not. Without knowledge of the contents of the telephone conversations between Mr. Eaton and Midstate, the court has before it no evidence of any fraud on Mr. Eaton's part. He may simply have failed to mention that he considered the goods to have been purchased for, and the money owed by, Propane Carboration.[2]

The facts thus indicate that Midstate had no notice of the bankruptcy of E & E,

whom they believed to be their debtor. Though they did have notice of their claim in the P-Car bankruptcy, they believed that notice to be a mistake. It is clear that that notice arrived almost three months after the last date for filing claims had passed in E & E's bankruptcy.

## CONCLUSIONS OF LAW

Despite the lack of notice to Midstate, the court finds that Bankruptcy Code § 1141(a) and (d)[3] had discharged E & E from Midstate's claim as of June 5, 1981, the date of confirmation of E & E's plan of reorganization, and that barring any proof of fraud, Rules 11–33(b)(2) and 302(e)[4] operate to protect a reorganized company after that date from any re-opening of the case to permit an omitted claim. The pertinent part of 1141 reads:

(a) Except as provided in subsections (d)(2) and (d)(3) of this section [not applicable here] the provisions of a confirmed plan bind the debtor, ... and any creditor ... whether or not the claim or interest of such creditor ... is impaired under the plan and whether or not such creditor ... has accepted the plan.

.    .    .    .    .

(d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

(A) discharges the debtor from any debt that arose before the date of such confirmation ... whether or not—

(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title

(ii) such claim is allowed under section 502 of such title; or

(iii) the holder of such claim has accepted the plan[5]

---

**2.** The two corporations performed slightly different functions; E & E sold propane fuel, and Propane Carboration converted vehicles from gas to propane. The invoices attached to Midstate's proof of claim are for such items as "hose, fittings," etc. These might have been used by either corporation. Propane Carboration was incorporated on November 8, 1980;

Mr. Eaton transferred ownership of it to Commonwealth Propane on June 5, 1981.

**3.** 11 U.S.C.A. § 1141 (West 1979).

**4.** 11 U.S.C.A. Rules of Bkrtcy Proc. Rules 11–33, 302 (West 1977).

**5.** 11 U.S.C.A. § 1141, n. 2.

The Rules referred to set a strict time limit on the filing of claims. They are adopted from the Bankruptcy Act § 57n, of which a Michigan court said:

> [It] constitutes a distinct reinforcement of the reasoning in favor of strict and "equity-proof" application of the statutory limitation. In allowing for extension of the time to file governmental tax claims, and in allowing the belated filing of proofs in cases where there is a surplus after all the other creditors have been paid in full, the Act unmistakably implies that under no circumstances other than those specifically referred to in the statute may the court admit a claim to untimely proof, but that it is under a duty to disallow it, with no power to substitute equitable considerations for the manifest intent of Congress. And Rule 302(e) has not changed this concept. Its basic language is: "a Claim must be filed within 6 months after the first date set for the first meeting of creditors..."[6]

It should be noted that Rule 11–33 specifically applies Rule 302(e) to chapter 11 cases, and that Rule 906(b), allowing for the enlargement of time requirements in some circumstances, specifically excepts Rule 302(e) from its provisions. The Michigan court concluded that bankruptcy court's equitable powers are "not unlimited," and noted that courts have generally disallowed late filed claims.[7] Though in V–M the creditor had had actual notice, other cases have held that the claim of a creditor without any notice will be disallowed. In an Oregon case with facts similar to those in the case at bar, a claim filed after the six-month statutory limit was disallowed even though the company had no knowledge of the pendency of the bankruptcy case until after expiration of the time limit, and the claims, if allowed, would have been only a small part of the total. *In re Condominiums Northwest, Inc.,* [1977 Transfer Binder] Bankruptcy Rep. (CCH) 66,622 (Bkrtcy.D. Ore.1975). "In *Mohonk Realty Corp. v. Wise Shoe Stores,* we pointed out that a consummated reorganization plan is binding even as against creditors who were not scheduled and did not know of the proceeding..." *North American Car Corp. v. Peerless W. & V. Mach. Corp.,* 143 F.2d 938, 941 (2d Cr.1944). In a case in which a late claim was allowed due to lack of notice, the court said:

> This court's decision does not hold that application for an extension of the time for filing a proof of claim after the claim date has expired will always be granted where the debtor knows of the claim, but the required notice of disclosure hearing or claim date has not been mailed to the creditors. Circumstances such as *an already confirmed plan,* ... or delay on the part of the creditor, may militate in favor of the conclusion that justice does not require nor allow the late filing of a proof of claim.[8]

A late claim by a creditor with no notice was disallowed in *In re Popular Fruit & Produce, Inc.,* 21 B.R. 185 (Bkrtcy.S.D.N.Y. 1982).

The cases cited by Midstate, *Mullane v. Central Hanover Bank & Trust Co., In re Intaco Puerto Rico,* and *In re Harbor Tank Storage Co.,*[9] make a distinction between the notice required when a creditor is known to the Trustee and that required when, as here, the creditor is not known to those responsible for sending the notice. On the facts of this case, it does not appear that the creditors who wrote the reorganization plan had access to the records of Propane Carboration, where Midstate's debt was listed. Midstate, on the other hand, apparently made no attempt to collect its debt between June 1980 and June or July 1981. Had they sent a bill to E & E during that time the Trustee would have known of their claim in time to amend debtor's schedules or dispute the claim: the burden of

**6.** *In Re V–M Corp.,* 23 B.R. 952, 953 (Bkrtcy., W.D.Mich.1982).

**7.** *Id.,* 955.

**8.** *In re C.S.T. Const. Co.,* 21 B.R. 840, 844 (Bkrtcy., N.D.Ill.1982) (emphasis added).

**9.** *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *In re Intaco Puerto Rico, Inc.,* 494 F.2d 94 (1st Cir.1974), *In re Harbor Tank Storage Co.,* 385 F.2d 111 (3rd Cir.1967).

giving notice to Midstate would then have rested upon the Trustee.

> It is the part of common prudence for all those who have any interest in [a thing] to guard that interest by persons who are in a situation to protect it.[10]

If Midstate's reliance upon assurances from Mr. Eaton in June 1980 was originally sound, a year without payment might have warned them that such reliance was not well placed. As the *Mullane* court said:

> Nor do we consider it unreasonable for the State to dispense with more certain notice to those beneficiaries ... [who] although they could be discovered upon investigation, do not in due course of business come to the knowledge of the common trustee.[11]

It seems that here creditors had to rely upon the schedules given to them by Mr. Eaton, and such other records of E & E's business as came to their attention during the reorganization period. After confirmation of the plan written by those creditors, new money and credit was extended to the reorganized company in reliance upon the plan. Under those circumstances, the court finds that the rules should be strictly applied to protect the reorganized company from late-filed claims. As another court said, "Modern administration requires a cutoff date past which claims may not be filed." [12]

Therefore, Midstate's motion for reconsideration of our order of November 30 is DENIED.

SO ORDERED.

---

10. *Mullane, supra* n. 8, at 316, 70 S.Ct. at 658.

11. *Id.,* 317, 70 S.Ct. 658–659.

12. *In re Supernit,* 186 F.2d 130, 132 (3rd Cir. 1950).